IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MARY G. CANDIDO,** *individually and on behalf of all others similarly situated,* | : : : | |
| | : | Case No. 2:23-CV-01542-CMR |
| Plaintiff | : : | JURY TRIAL DEMANDED |
| v. | : : | |
| **UPPER DARBY TOWNSHIP,** | : : | |
| Defendant | : | |

**DEFENDANT UPPER DARBY TOWNSHIP'S MEMORANDUM OF LAW
IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendant, Upper Darby Township ("Upper Darby" or the "Township") by its attorneys, files the following Memorandum of Law in Support of its Motion to Dismiss the Class Action Complaint filed by Plaintiff.

I.  **INTRODUCTION**

In this putative class action, Plaintiff Mary G. Candido seeks recovery of damages, as well as declaratory and injunctive relief, against Upper Darby on behalf of herself and other similarly-situated individuals under 42 U.S.C.A. § 1983 ("Section 1983") for alleged deprivations of her due process rights in connection with parking tickets issued by the Township. Specifically, Plaintiff alleges that Upper Darby's failure to issue summonses in connection with parking tickets written since the spring of 2021 violated her right to procedural due process by depriving her of notice and an opportunity for a hearing to contest those parking tickets. Plaintiff also asserts related state law claims for negligence and unjust enrichment based on these alleged due process violations, and further asserts entitlement to recovery of reasonable attorneys' fees and costs under 42 U.S.C.A. § 1988.

The Complaint should be dismissed for two distinct but interrelated reasons. First, Plaintiff lacks sufficient standing to bring suit – either on behalf of herself or as a representative of the putative class – due to her failure to allege any "injury-in-fact" personally suffered by her. Second, the Complaint fails to state a claim upon which relief may be granted – due in part to Plaintiff's aforementioned failure to allege any injury personally suffered by her, as well as the application of the governmental immunity doctrine.

### A. Procedural History

Plaintiff filed her Class Action Complaint on April 21, 2023, which was served on Upper Darby as of April 24, 2023. (Docket No. 1-2). Thereafter, the Parties stipulated to an extension of time in which to respond to the Complaint, and the court ordered responsive pleadings to be filed on or before June 23, 2023. (Docket No. 7-8).

### B. Factual History

Upper Darby – a home rule township located in the Commonwealth of Pennsylvania – enforces local parking ordinances and regulations through its Parking Enforcement Department, a municipal agency *distinct* from the local police department. (Complaint ¶ 2, 12). The Township provides individuals with *notice* of purported parking violations through the issuance of parking tickets,[1] which carry fines and the *potential* for criminal prosecution if not paid or successfully challenged in court. (Complaint ¶ 2, 13). Each parking ticket issued by the Township specifically advises the recipient of their right to contest the ticket by refusing to pay the initial fine and awaiting a summons from the *district justice* in order to receive a hearing. (Complaint ¶ 2, 16). Alternatively, the recipient may elect to plead guilty to the alleged parking violation by paying the

---

[1] While Plaintiff's Complaint appears to conflate the issuance of "parking tickets" by the Township with the issuance of a "citation" marking the institution of summary proceedings, this is an inaccurate description, based on comments to Pa.R.Crim.P. Rule 401.

fines assessed in the parking ticket in order to avoid the risk of incurring additional fees and costs upon formal prosecution and a finding of guilt by the district judge. (Complaint ¶ 2, 15).

Despite her acknowledgment that summonses on unpaid parking tickets are typically issued by the local district justice, Plaintiff nevertheless claims that *Upper Darby* has somehow failed to satisfy a duty to issue those summonses since at least the spring of 2021. (Complaint ¶ 17). Plaintiff asserts that the Township's purported failure to issue these summonses has deprived her and other class members of notice and an opportunity for a hearing to contest their parking tickets, leaving them "in limbo" under a subjective fear of prosecution and "ever-compounding fines." (Complaint ¶ 18). Notably, Plaintiff does *not* allege that she has *personally* suffered any such fear of prosecution, nor does she otherwise allege any additional steps that have been taken by the Township to enforce payment of her parking tickets through prosecution.

Plaintiff also identifies a separate putative "subclass" of individuals who chose to plead guilty to their parking tickets and pay the fines assessed – despite their supposed belief in the existence of adequate grounds to contest those tickets – based on subjective feelings of uncertainty, fear, or confusion. (Complaint ¶ 19, 27). In further support of her allegations, Plaintiff cites to a recent CBS News broadcast and article highlighting one "extreme example" of a local barber shop owner (who is currently *not* a named plaintiff in this action) who allegedly had his car towed due to a failure to pay parking tickets for which he supposedly never received a summons or opportunity for a hearing. (Complaint ¶ 20).[2] Again, Plaintiff notably does *not* allege that she has ever *personally* paid any fines, fees or costs in connection with parking tickets received from the

---

[2] CBS News Philadelphia, "Concern Grows in Upper Darby Over Handling of Parking Tickets" (January 31, 2023), available at https://www.cbsnews.com/philadelphia/news/cbs3-investigations-upper-darby-parking-violations/ (last visited June 9, 2023).

Township, nor does she allege any other deprivation of any *individual* life, liberty or property interest as a result of receiving those tickets.

## II.     ARGUMENT

### A. Legal Standard for Motions to Dismiss

#### 1.  F.R.C.P. 12(b)(1) – Lack of Standing

The objection that a federal court lacks subject-matter jurisdiction may be raised by a party, or by a court on its own initiative, at any stage in the litigation.[3] Federal courts have an independent obligation to determine whether subject-matter jurisdiction exists, even in the absence of a challenge from any party.[4] If the court determines *at any time* that subject-matter jurisdiction is lacking, it *must* dismiss the complaint *in its entirety*.[5] A motion to dismiss for lack of standing is properly brought as a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1).[6]

The standard for reviewing a challenge to subject-matter jurisdiction under Rule 12(b)(1) depends on whether the challenge is "facial" or "factual" in nature.[7] Where the challenge involves a facial attack concerning an alleged pleading deficiency, the court may only consider the allegations of the complaint and documents referenced therein or attached thereto, which must be viewed in the light most favorable to the plaintiff.[8] By contrast, in reviewing a factual attack concerning the failure of a plaintiff's claims to comport with the jurisdictional prerequisites, no

---

[3] F.R.C.P. 12(b)(1); *See also Arbaugh v. Y&H Corp.*, 546 U.S. 500, 506, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).
[4] *See Arbaugh* at 514.
[5] F.R.C.P. 12(h)(3); *See also Arbaugh*, at 514; *Joyce v. U.S.*, 474 F.2d, 215, 219 (3d. Cir. 1973) ("Where there is no jurisdiction over the subject matter, there is, as well, no discretion to ignore that lack of jurisdiction.")
[6] *Ballentine v. U.S.*, 486 F.3d 806, 810 (3d. Cir. 2007)).
[7] *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir.2009).
[8] *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).

presumptive truthfulness attaches to the plaintiff's allegations, and the court may consider evidence outside the pleadings.[9]

### 2. F.R.C.P. 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible "on its face."[10] Plausibility requires "enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim."[11] When considering a motion to dismiss under Rule 12(b)(6), the court must assume as true all well–pleaded allegations contained in the Complaint.[12] However, the court is not required to accept as true any legal conclusions or unwarranted factual inferences, and a mere "threadbare recital" of the elements for a cause of action will not suffice.[13]

Thus, in determining the sufficiency of a complaint, a court ruling on a motion to dismiss should generally: (1) take note of the elements a plaintiff must plead in order to state a claim; (2) identify and disregard conclusory allegations not entitled to an assumption of truth; and (3) assume as true all remaining well-pleaded factual allegations in determining whether such allegations plausibly give rise to an entitlement for relief.[14] In adjudicating a Rule 12(b)(6) motion, the court may consider only the complaint, exhibits attached thereto, matters of public record, and undisputedly authentic documents upon which the complainant's claims are based.[15]

### B. Plaintiff has Failed to Establish Standing to Assert Claims on Behalf of Herself or Members of the Putative Class or Subclass based on a Lack of "Injury-in-Fact."

---

[9] *Id.*; *See also Mortensen v. First Federal Sav. And Loan Ass'n*, 549 F.2d 884, 891 (3d. Cir. 1977).
[10] *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).
[11] *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).
[12] *Marshall v. Lauriault*, 372 F.3d 175, 179 (3d Cir. 2004).
[13] *Ashcroft* at 678-79.
[14] *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011).
[15] *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 772 (3d Cir. 2013).

The "irreducible constitutional minimum" of standing requires a showing of three elements: (1) "*injury-in-fact*;" (2) "traceability" of the injury to the challenged actions of the defendant; and (3) a likelihood that the injury will be redressed by a favorable decision (i.e. "*redressability*").[16] A plaintiff must be able to demonstrate all three elements of standing for *each claim asserted*, and for *each form of relief being sought*, in order to maintain their action.[17] It is the plaintiff's burden, at the pleading stage, to establish standing by alleging facts which *affirmatively* and *plausibly* suggest that they have standing to sue.[18]

In a putative class action, at least *one named plaintiff* must able to establish standing by alleging and demonstrating that they have *personally* suffered the injury in question.[19] A plaintiff may not establish standing by alleging injuries suffered by other *unidentified* members of the putative class.[20] A named plaintiff who fails to allege standing individually is unqualified to seek relief on behalf of a proposed class.[21]

In order to demonstrate an "injury-in-fact" necessary to establish standing, a plaintiff must be able to show an invasion of a legally-protected interest which is both: a) "concrete" and "particularized"; and b) "actual" or "imminent" (as opposed to merely "conjectural" or "hypothetical").[22] For an injury to be "particularized," it must affect the plaintiff in a *personal* and *individual* way.[23] "[W]hen the asserted harm is a generalized grievance shared in substantially

---

[16] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
[17] *TransUnion LLC v. Ramirez*, 141 S.Ct. 2190, 2208, 210 L.Ed.2d 568 (2021).
[18] *Finkelman v. Nat'l Football League*, 810 F.3d 187, 194 (3d Cir. 2016).
[19] *See Warth v. Seldin*, 422 U.S. 490, 501-02, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).
[20] *See Id.* at 502.
[21] *Id.*
[22] *Id.* at 560.
[23] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339, 136 S.Ct. 1540, 194 L.Ed.2d 635 (2016).

equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."[24]

In order to be considered "concrete," an injury must be "*de facto*," meaning a *real* injury which *actually exists* (as opposed to an *abstract* or *nonexistent* one).[25] While an intangible harm may be recognized as "concrete" for the purpose of establishing standing, such harms are typically limited to those traditionally regarded as providing a basis for suit, or which have otherwise been made cognizable by Congress through statute.[26] However, a plaintiff generally may not satisfy the injury-in-fact requirement by alleging a "bare procedural violation" divorced from any concrete harm.[27] Thus, "deprivation of a procedural right without some concrete interest that is affected by the deprivation ... is insufficient to create Article III standing."[28]

Where a Plaintiff cannot demonstrate the existence of an *actual* injury, they must be able to demonstrate the existence of an *imminent* injury which is "certainly impending" as opposed to "speculative."[29] An injury will not be deemed "imminent" where the plaintiff alleges only a *potential* for injury at some indefinite future time, and the acts necessary to bring about the injury are at least partly within the Plaintiff's own control.[30] While some courts have granted plaintiffs standing to sue based on a "substantial risk" of harm, such a substantial risk cannot be based on an "attenuated chain of circumstances" involving "unfettered choices made by independent actors not

---

[24] *Warth* at 499.
[25] *See Spokeo* at 339. (citing Black's Law Dictionary 479 (9th ed. 2009)).
[26] *See Id*. (citing several Supreme Court cases granting standing based on alleged First Amendment violations).
[27] *Id.* at 341.
[28] *Summers v. Earth Island Institute*, 555 U.S. 488, 496, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009).
[29] *Id.*
[30] *Id.*

before the court."[31] Moreover, a plaintiff cannot "manufacture" standing merely by inflicting harm on themselves based on a subjective fear of hypothetical future harm.[32]

Here, the primary "injuries" which Plaintiff appears to allege in her complaint include: (1) violation of her procedural due process rights based on failure to issue summonses in connection with unpaid parking tickets; (2) liability for "ever-compounding fines" associated with unpaid parking tickets; (3) fear of prosecution in connection with parking tickets issued; and (4) payment of parking tickets by certain unnamed members of the "Subclass" based on "fear," "confusion," "uncertainties" and "risks" associated with the alleged fear of prosecution. For the reasons stated below, none of the harms alleged by Plaintiff are sufficient to establish standing for her to bring suit – either on behalf of herself or other members of the putative class and/or subclass.

1. **Plaintiff Fails to Allege Any Deprivation of an Individual Interest in "Life," "Liberty," or "Property."**

In order to assert a violation of procedural due process rights, in addition to alleging a lack of procedural safeguards (i.e. notice and a hearing), Plaintiff must also be able to show a *deprivation* of some *individual interest* in "life, liberty, or property" stemming from the procedural deficiencies alleged.[33] This requirement mirrors the ruling in the *Summers* case cited above indicating that "deprivation of a procedural right *without some concrete interest that is affected by the deprivation* ... is insufficient to create Article III standing." Thus, where a plaintiff pleads only a procedural deficiency, but otherwise fails to allege any actual or imminent "concrete and particularized" harm resulting from such deficiency, he or she will be unable to establish standing to sue for an alleged procedural due process violation.

---

[31] *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 130 S.Ct. 2743, 2754–2755, 177 L.Ed.2d 461 (2010); *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 414 at n. 5, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013).
[32] *See Clapper* at 416.
[33] *See Hill v. Borough of Kutztown*, 455 F.3d 225, 234 (3d Cir. 2006).

8

As noted above, although Plaintiff asserts that she was denied notice and an opportunity for a hearing to challenge her parking tickets due to the Township's purported failure to issue summonses on those tickets, she has otherwise failed to allege that she has *personally* suffered any actual deprivation of life, liberty or property resulting from those procedural defects. While Plaintiff does allude to deprivations of property allegedly suffered by other *unidentified* members of the putative "Subclass" (e.g. payment of fines, towing of vehicles, etc.), under the Supreme Court's holding in *Warth v. Seldin*, Plaintiff may *not* rely on such allegations to demonstrate standing on behalf of herself. Thus, absent any further allegations of particularized and concrete harm stemming from an imminent deprivation of an individual interest in life, liberty or property, the "bare procedural violations" alleged by Plaintiff are insufficient to grant her standing to seek relief on behalf of herself or other putative class members for alleged due process violations.

    **2. Process for Enforcing Parking Tickets Contains Sufficient Procedural Safeguards, Rendering Threat of Harm from Prosecution "Hypothetical."**

Under Pennsylvania law, the parking tickets issued by Upper Darby do *not* constitute "citations" marking the institution of summary proceedings, nor do they serve as a determination of guilt regarding the underlying parking violation alleged.[34] Rather, parking tickets are characterized as "device[s] of convenience to the local government *and the defendant*" which serve "to *inform* defendants of parking violations and to offer defendants an opportunity to *avoid* criminal proceedings," typically by paying a fine which is *less* than the authorized penalty for the parking violation alleged within the time specified on the ticket.[35] Plaintiff's own Complaint acknowledges this fact, characterizing the parking tickets issued by the Township as "*notices* of

---

[34] *See* Comment to Pa.R.Crim.P. Rule 401.
[35] Pa.R.Crim.P. Rule 401(A) and accompanying comments; *See also Com. v. Owens*, 629 A.2d 150, 153-54 (Pa.Super. 1993) (citing identical comments to the predecessor version of Rule 401(A) in holding that appellant's due process rights had not been violated simply because of the escalation in fines resulting from his decision not to pay the reduced fine assessed on his parking ticket).

violation of law" which "carry with them fines and *potentially* criminal prosecution if not paid *or successfully challenged in court*."

Further, Pennsylvania law makes it clear that "*no enforcement of penalty can be based upon a [parking] ticket alone.*"[36] Rather, in order to enforce collection of fines on Plaintiff's unpaid parking tickets, the Township must first institute formal summary proceedings by having law enforcement file a citation with the local district judge, or by electronically transmitting parking violation information to the court.[37] Municipalities are generally afforded discretion on whether or not to issue a citation in connection with any unpaid parking ticket.[38]

Once a citation has been issued, the *district judge* (*not* the Township) is responsible for issuing a summons commanding the defendant to respond within ten (10) days with a plea of "guilty" or "not guilty."[39] Again, Plaintiff's Complaint acknowledges that the issuance of summonses is generally the responsibility of the district justice, and that parking tickets issued by the Township specifically advise recipients of this fact. (Complaint ¶ 2, 16). Only upon receiving a plea of "not guilty" in response to a summons is the court then required fix a date and time for a hearing, and to provide the defendant with notice of the same.[40]

The district judge is required to actually try the case and return a guilty verdict before any sentence may be imposed or enforced.[41] Where the defendant fails to appear for their hearing, the district justice may either try the case *in absentia* or exercise its discretion to *postpone* the hearing date where good cause exists to do so.[42] Even where a guilty verdict is reached, defendants may avoid the imposition of a sentence by successfully exercising their right to appeal the district

---

[36] Comment to Pa.R.Crim.P. Rule 401.
[37] Pa.R.Crim.P. Rule 401(A)(2); *See also* Pa.R.Crim.P. Rule 103 (defining the term "Issuing Authority").
[38] Comment to Pa.R.Crim.P. Rule 401.
[39] Pa.R.Crim.P. Rules 401(A)(2); 411(A).
[40] Pa.R.Crim.P. Rule 413(B).
[41] Pa.R.Crim.P. Rules 454-455.
[42] Pa.R.Crim.P. Rules 455(A).

judge's decision to the Court of Common Pleas for a trial *de novo* within thirty (30) days.[43] The district judge is required to notify the defendant of their appeal rights – either in person at the hearing or, if tried *in absentia*, by first class mail.[44]

Given the extensive process required for enforcing unpaid parking tickets under Pennsylvania law – which process includes opportunities for notice, pleading, hearing, impartial judicial determination and appeal – the risk that Plaintiff *may* eventually suffer injury as a result of prosecution of her unpaid parking tickets rests on a "highly attenuated set of circumstances" the outcome of which depends in part on the decisions of both the Plaintiff and the Township, as well as the "unfettered choices" of the district judge. As such, the remote possibility of future harm following completion of such enforcement proceedings is far too hypothetical and speculative to be viewed as "imminent" or "certainly impending" for purposes of establishing standing. Further, while Plaintiff may allege that the Township has *delayed* such enforcement proceedings by failing to issue citations to the court (a decision which is left to the Township's discretion), Plaintiff does not allege any additional actions by the Township to try and *circumvent* these proceedings, such as by attempting to collect or enforce penalties based solely on her receipt of parking tickets. Even if Plaintiff were required to pay any fines or penalties on her parking tickets following the institution of such enforcement proceedings, the safeguards inherent in those proceedings would more than satisfy any due process requirement for notice and hearing, thus defeating Plaintiff's assertion of an injury based on the Township's alleged violation of her due process rights.

    3. **"Fear of Prosecution" Does Not Constitute a Concrete or Imminent Harm Sufficient to Grant Standing.**

---

[43] Pa.R.Crim.P. Rules 454(F)(2), 455(D).
[44] *Id.*

Plaintiff alleges throughout her complaint that the lack of summonses issued on parking tickets written by the Township caused her and other class members to live in "fear of prosecution."[45] While the Supreme Court has acknowledged that a plaintiff may assert standing based on a "reasonable fear" or "credible risk" of prosecution under a state statute, the Court has typically limited the availability of such "pre-enforcement" standing to situations where the plaintiff seeks to *challenge* or *prevent* the enforcement of an allegedly unconstitutional law.[46]

Here, the Plaintiff understandably does not seek to challenge the constitutionality of Upper Darby's parking laws, nor does she seek to prevent the enforcement of those laws. On the contrary, Plaintiff actively *encourages* the very "prosecution" which she allegedly fears by demanding the issuance of summonses and scheduling of hearings in connection with her unpaid parking tickets. As such, Plaintiff's alleged "fear of prosecution" would not be sufficient to afford her the same type of "pre-enforcement standing" recognized in the *American Booksellers* and *Babbit* cases cited above. To the extent that Plaintiff seeks to assert standing based on her fear over the possible *outcome* of any prosecution instituted in connection with her unpaid parking tickets, as noted above, such fears are far too speculative to establish any *imminent* or *concrete* harm, based on the extensive enforcement process required under Pennsylvania law.

### C. Plaintiff Fails to State a Claim for Relief Under Any Cause of Action Asserted in Her Complaint

#### 1. Count I – Violation of Due Process Rights Under 42 U.S.C.A. § 1983

---

[45] Complaint ¶¶ 4, 18.
[46] *See Virginia v. American Booksellers Ass'n, Inc.*, 484 U.S. 383, 108 S.Ct. 636, 98 L.Ed.2d 782 (1988) (involving a bookstore owner's facial challenge of an amendment to a Virginia state statute banning the display of books and materials deemed "harmful to juveniles" based on first amendment freedom of speech); *Babbitt v. United Farm Workers Nat. Union*, 422 U.S. 289, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979) ("*When contesting the constitutionality of a criminal statute*, it is not necessary that the plaintiff first expose himself to actual arrest or prosecution to be entitled to challenge the statute that he claims deters the exercise of his constitutional rights.") (internal quotations and citations omitted).

To state a claim under 42 U.S.C.A. § 1983 ("Section 1983"), a plaintiff must allege facts sufficient to demonstrate a violation of an *individual* right or privilege secured by the Constitution or laws of the *United States* committed by a person acting under color of state law.[47] Section 1983 is not itself source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.[48] As such, the first step in a Section 1983 claim is to identify the *specific federal* right(s) allegedly infringed.[49] Violations of *state* constitutional or statutory provisions are insufficient to support a cause of action under Section 1983.[50]

Municipalities and other local government units are included within the definition of "persons" who may be sued under Section 1983.[51] However, a municipality may not be held vicariously liable under Section 1983 for constitutional violations committed by its employees under a *respondeat superior* theory; rather, a municipality may only be held directly liable under Section 1983 where the alleged constitutional violation arose pursuant to an "official policy or custom."[52] Examples of such policies or customs include decisions of a government's lawmakers, the acts of its policymaking officials, or practices which are so *persistent*, *widespread, traditional* and *deeply-rooted* as to practically have the force of law.[53]

A municipality's culpability for a deprivation of rights under Section 1983 is at its *most tenuous* where a claim turns on the alleged "failure to train" employees.[54] To satisfy the statute, a

---

[47] *Moore v. Tartler*, 986 F.2d 682, 685 (3d. Cir. 1993).
[48] *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) *rehearing denied* 510 U.S. 1215, 114 S.Ct. 1340, 127 L.Ed.2d 688.
[49] *Graham v. Connor*, 490 U.S. 386, 394, 109 S.Ct. 1865, 1870, 104 L.Ed.2d 443 (1989).
[50] *See City of Oklahoma City v. Tuttle*, 471 U.S. 808, 817 at n. 4, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) ("[A] *federal* right … had to be violated to establish liability under § 1983.") (emphasis added); *See also Capogrosso v. The Supreme Court of New Jersey*, 588 F.3d 180, 186 (3d. Cir. 2009) (holding that a claim for violation of New Jersey's state constitution failed to state a claim cognizable under Section 1983).
[51] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).
[52] *Id*. at 691-94.
[53] *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011).
[54] *Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985) (plurality opinion).

municipality's failure to train its employees in a relevant respect must amount to "deliberate indifference to the rights of persons with whom the [employees] come into contact."[55] "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a *known* or *obvious* consequence of his action."[56] A plaintiff must also demonstrate that the municipality had *notice* of the specific deficiencies in its training program giving rise to the constitutional violation.[57] A less stringent standard of fault for a failure-to-train claim "would result in *de facto respondeat superior* liability on municipalities ...."[58]

Count I of Plaintiff's complaint asserts a cause of action under Section 1983 for violation of her "due process rights" based on Upper Darby's alleged "failure to train" its employees regarding the need to provide notice and an opportunity for hearing to parking ticket recipients. (Complaint ¶ 38-43). As noted in the *Tuttle* and *Connick* cases cited above, this places Plaintiff's Section 1983 claim in a highly "tenuous" position, requiring her to allege that the Township had notice of the deficiencies in its training program, but was nonetheless "deliberately indifferent" to the rights of the Plaintiff and others.

With respect to the *legal* basis for bringing her Section 1983 claim, the bulk of Plaintiff's allegations claiming a lack of notice and opportunity for hearing provided by the Township appear to indicate her attempt to assert violations of the *procedural* Due Process Clause of the *Fourteenth* Amendment (applicable to states and their political subdivisions). As previously noted in the standing analysis outlined above, a plaintiff seeking to assert a procedural due process violation must generally allege some mistaken deprivation of an individual interest in life, liberty or property

---

[55] *Canton v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).
[56] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[57] *Connick*, 563 U.S. at 62 ("[W]ithout notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have "deliberately" chosen a training program that will cause violations of constitutional rights.")
[58] *Canton*, 489 U.S. at 392.

in addition to an alleged deficiency in procedural safeguards. Here, because Plaintiff has failed to allege that she has *personally* suffered any actual or imminent deprivation of such an interest by the Township, she has failed to demonstrate the existence of any procedural due process violation sufficient to support her Section 1983 claim.

In addition to her allegations of procedural due process violations, Plaintiff goes on to allege a litany of other constitutional violations purportedly committed by the Township, including violation of her right to *substantive* due process, as well as deprivation of rights guaranteed by the Fourth and Fifth Amendments of the U.S. Constitution and certain unspecified provisions of the Pennsylvania state constitution. (Complaint ¶ 45). For the reasons that follow, such conclusory allegations are insufficient to support Plaintiff's claim under Section 1983.

### a. Alleged Violations of Pennsylvania State Constitution Will Not Support a Cause of Action Under Section 1983.

As noted above, Section 1983 only applies to purported violations of constitutional or legal rights provided under *federal* law. As such, Plaintiff's allegations that the Township deprived her of rights under the Pennsylvania state constitution, even if true, cannot be used to support her cause of action under Section 1983.

### b. Fifth Amendment Due Process Clause Inapplicable to States or Municipalities.

The Fifth Amendment's due process clause generally restricts actions of the *federal* government, and does not apply to the actions of Upper Darby as a state political subdivision.[59] Plaintiff's complaint is otherwise devoid of any factual allegations giving rise to an inference of any other purported violations of her *personal* Fifth Amendment rights (e.g. freedom from self-incrimination; right to a grand jury; freedom from double-jeopardy; freedom from government

---

[59] *See Citizens for Health v. Leavitt*, 428 F.3d 167, 178 n. 11 (3d Cir.2005) ("In a due process claim brought under the Fifth Amendment, the 'State' in the state action analysis is the federal government.").

"takings" without just compensation, etc.). As such, Plaintiff has failed to state a claim under Section 1983 based on a violation of Fifth Amendment rights.

### c. Plaintiff Fails to Allege any Unreasonable "Search" or "Seizure" in Violation of her Fourth Amendment Rights.

The Fourth Amendment's due process clause protects individuals against unreasonable search and seizure of their "persons, houses, papers and effects" by government actors without a warrant and/or probable cause.[60] Here, Plaintiff does not allege any facts which demonstrate any unreasonable search or seizure of her person, home, papers or effects committed by Upper Darby As such, Plaintiff has failed to allege a violation of her Fourth Amendment rights sufficient to support a claim under Section 1983.

### d. No Allegations of Substantive Due Process Violations Under the Fourteenth Amendment.

The substantive component of the Fourteenth Amendment's Due Process Clause bars certain arbitrary, wrongful government actions, *regardless* of the fairness of the procedures used to implement them, thereby serving to prevent governmental power from being used for purposes of oppression.[61] Where abusive action by a member of the executive branch is alleged, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense."[62] To establish a substantive due process violation by a municipality, a plaintiff must show that executive action was "so ill-conceived or malicious that it shocks the conscience."[63]

The Third Circuit has identified three standards that can support a finding of government action which "shocks the conscience": (1) *deliberate indifference*; (2) gross negligence or

---

[60] U.S. Const. Amend. IV.
[61] *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *See also*
[62] *See Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 1716, 140 L.Ed.2d 1043 (1998)).
[63] *Mulholland v. Government County of Berks, Pa.*, 706 F.3d 227, 241 (2013) (citing *Miller v. City of Phila.*, 174 F.3d 368, 375 (3d Cir. 1999).

arbitrariness; or (3) intent to cause harm.[64] "Where state actors have the luxury of proceeding in a deliberate fashion … deliberate indifference may be sufficient to shock the conscience."[65] However, as noted above, this is a stringent standard requiring proof that a municipal actor disregarded a *known* or *obvious* consequence of his action."[66] As such, officials may not be held liable under this standard for actions which are merely negligent.[67]

As noted above, the mere issuance of parking tickets by Upper Darby did not constitute a "deprivation" of any interest in life, liberty or property, and could not realistically be said to "shock the conscience." With respect to Plaintiff's allegations regarding the Township's subsequent failure to provide notice and an opportunity for a hearing in connection with those parking tickets, such allegations are more appropriately considered under a *procedural* due process framework and would not likely give rise to a *substantive* due process claim, which seeks to curtail government action *regardless* of the procedural processes followed. Due to the lack of any other allegations of arbitrary, wrongful actions taken by Upper Darby against Plaintiff *personally* which would "shock the conscience," Plaintiff has failed to state a claim under Section 1983 based on a violation of her substantive due process rights.

### 2. Count II – Negligence.

In order to state a claim for negligence, a plaintiff must generally allege facts sufficient to demonstrate: (1) the existence of a duty of reasonable care owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury suffered by plaintiff as a result of that breach. However, in Pennsylvania, local agencies and their employees acting in their official

---

[64] *Phillips v. County of Allegheny*, 515 F.3d 224, 241 (3d Cir. 2008) (citing *Sanford v. Stiles*, 456 F.3d 298, 306 (3d Cir. 2006)).
[65] *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir.2005) (internal citations omitted).
[66] *Board of Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997).
[67] *County of Sacramento v. Lewis*, 523 U.S. at 848-49.

17

capacities enjoy governmental immunity from tort liability under the state's Political Subdivision Tort Claims Act ("PSTCA").[68] Such governmental immunity may only be waived or excepted where all three of the following conditions are met: (1) damages would be recoverable at common law or under a statute creating a cause of action if the injury were caused by a person not protected by immunity; (2) the injury was caused by the negligent acts of the local agency or an employee thereof acting within the scope of his office or duties; and (3) the claim falls within one of the *statutory exceptions* listed under the Act.[69] Courts apply a rule of strict construction when interpreting these statutory exceptions to governmental immunity.[70]

Here, Upper Darby is clearly entitled to governmental immunity against tort liability under the PSTCA as a home rule township. As such, Plaintiff must be able to demonstrate that her tort claim for negligence falls within one of the PSTCA's statutorily-defined and narrowly-construed exceptions to governmental immunity. Looking at the allegations asserted in support of Plaintiff's negligence claim, these largely appear identical to the allegations asserted in support of her Section 1983 claim.[71] As such, the dismissal of Plaintiff's Section 1983 claim would likely necessitate the dismissal of her claim for negligence. Given that Plaintiff alleges no other facts tending to demonstrate application of any statutory exceptions to governmental liability, Count II of Plaintiff's complaint should be properly dismissed for failure to state a claim.

### 3. Count III – Unjust Enrichment.

In order to state a claim for unjust enrichment, Plaintiff is required to plead the following elements: (1) *benefits* conferred on the Township by Plaintiff; (2) appreciation of such *benefits* by the Township; and (3) acceptance and retention of such *benefits* under circumstances rendering the

---

[68] 42 Pa.C.S.A. § 8541; *Walker v. North Wales Borough*, 395 F.Supp.2d 219, 230 (E.D.Pa. 2005).
[69] 42 Pa.C.S.A. § 8542(a); *Balletta v. Spadoni*, 47 A.3d 183, 195 (Pa.Cmwlth 2012).
[70] *Jones v. Southeastern Pennsylvania Transp. Authority*, 772 A.2d 435 (Pa. 2001).
[71] Complaint at ¶¶ 46-53.

retention of those benefits by the Township inequitable without payment of value.[72] In the absence of fraud, coercion, or specific request, a governmental body is not unjustly enriched by benefits voluntarily conferred upon it except where a benefit is conferred under circumstances making such action necessary for the protection of the government's interests or the interests of a third person.[73]

Here, Plaintiff has failed to satisfy *any* of the elements outlined above, as she does not allege that she ever *personally* conferred any "benefit" on Upper Darby in connection with the parking tickets she received. While Plaintiff does allege that Upper Darby was unjustly enriched at the expense of certain unidentified "subclass" members who actually paid their parking tickets,[74] as repeatedly noted above, Plaintiff cannot base her own claim for unjust enrichment on the injuries allegedly sustained by other unidentified members of the putative class. As such, Plaintiff has failed to state a claim for Unjust Enrichment, and is unqualified to assert such a claim on behalf of the unnamed putative "subclass" members.

### 4. Count IV – Attorneys' Fees Pursuant to 42 U.S.C.A. § 1988.

42 U.S.C.A. § 1988(b) ("Section 1988") empowers federal courts, in their discretion, to allow for recovery of reasonable attorneys' fees by the prevailing party as part of the costs associated with any action or proceeding under various sections of Title 42, including causes of action brought under Section 1983. Given the need for dismissal of Plaintiff's Section 1983 claim, as outlined above, Plaintiff's claim for attorneys' fees under Section 1988 should similarly be dismissed.

### III. CONCLUSION.

---

[72] *WFIC, LLC v. LaBarre*, 148 A.3d 812 (Pa. Super. 2016);
[73] *Garofolo, Curtiss, Lambert & MacLean, Inc. v. Com., Dept. of Revenue*, 648 A.2d 1329 (Pa.Cmwlth. 1994).
[74] Complaint, ¶ 56.

For the foregoing reasons, Plaintiff's Complaint should be dismissed with prejudice for lack of standing and for failure to state a claim upon which relief may be granted. Specifically, Plaintiff fails to allege that she has personally suffered, or is at significant "imminent" risk of suffering, any deprivation of a life, liberty or property interest based on the Township's failure to issue summonses on the parking tickets she received. The failure to plead a deprivation of personal, individual interests demonstrates a lack of "injury-in-fact" suffered by the Plaintiff, and undermines her ability to assert a claim for violation of her due process rights under Section 1983, as well as her analogous claim for attorneys' fees under Section 1988. Plaintiff's state law claim for unjust enrichment should be similarly dismissed, based on Plaintiff's failure to allege any benefit conferred by her upon the Township. Lastly, Plaintiff's state law negligence claim should be dismissed based on her inability to demonstrate a violation of her constitutional rights, and further based on the application of the doctrine of governmental immunity.

Respectfully submitted,

**CIPRIANI & WERNER, P.C.**

Date: June 20, 2023

By: ___/s/ *Joseph P. Shelby*___
Joseph P. Shelby, Esquire
PA 69399
45 E. Orange St., Lancaster, PA 17602
Phone: 717.390.3020
email: jshelby@c-wlaw.com
*Attorney for Defendant Upper Darby Township*