**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | |
|---|---|
| MARY G. CANDIDO, individually, and on behalf of all others similarly situated,<br>    Plaintiff,<br><br>v.<br><br><br>UPPER DARBY TOWNSHIP,<br>    Defendant | Case No. 2:23-cv-01542-CMR |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM OF LAW**

## I.   INTRODUCTION

Plaintiff Mary G. Candido respectfully moves for preliminary approval of the proposed class action settlement agreement attached hereto as Exhibit A (the "Settlement") and for conditional certification of the Settlement Class, which will resolve Plaintiff's and all proposed Settlement Class Members' claims in this action concerning the alleged lack of notice and a hearing in connection with parking tickets issued by Defendant Upper Darby Township ("Defendant" or "Upper Darby") between January 1, 2021 and December 31, 2022 (the "Class Period").  Defendant does not oppose this motion.

Preliminary approval should be granted because the Settlement provides substantial relief for the Settlement Class, and the Settlement's terms are fair, adequate, and reasonable. Under the Settlement, Upper Darby will commit $800,000 to a non-reversionary fund from which each Settlement Class Member who paid a parking ticket during the class period may receive a pro rata share per ticket paid. Further, pursuant to the Settlement, Upper Darby will cancel all unpaid tickets issued during the Class Period, and also has agreed to practice changes reasonably necessary to ensure notice and a hearing are timely provided for unpaid parking tickets in the future.

Simply put, the Settlement represents significant value to the Class, and is fair, adequate, and reasonable.  For these reasons, discussed more fully below, Plaintiff asks this Court to issue an order preliminarily approving the Settlement, appointing Plaintiff as settlement class representative, appointing undersigned as Class Counsel, approving the class notice program, and setting a date for a final approval hearing.

## II.     BACKGROUND

### A.     Summary of This Action

Plaintiff commenced this action by filing a putative class action complaint on April 21, 2023. Plaintiff's complaint alleges that Upper Darby failed to provide notice and a hearing in connection with parking tickets issued to putative class members since at least mid-2021 through at least December 2022.  *See* Compl. (ECF 1), ¶¶ 1-3.  Absent notice and an opportunity to be heard, the Complaint alleges that ticket recipients often either (i) simply plead guilty and paid the fine, even if they had good grounds to contest them, because they are never afforded any notice or opportunity to contest the tickets, or (ii) remain in limbo awaiting a hearing, the notice for which never comes, while the fines continue to compound under fear of prosecution.  *Id.* ¶¶ 18-19. The four-count complaint alleges Upper Darby's actions or inactions constitute procedural and substantive due process and other constitutional violations under 42 U.S.C. § 1983 (Count I), negligence (Count II), unjust enrichment (Count III), and a claim for attorneys' fees under 42 U.S.C. § 1988 (Count IV).  Id. ¶¶ 37-63.

Upper Darby moved to dismiss the Complaint on July 14, 2023. *See* ECF 11. On February 27, 2024, the Court granted in part and denied in part Upper Darby's motion, ultimately allowing the due process violations under § 1983,and the unjust enrichment claim, to proceed. *See* ECF 21, 22. Discovery commenced shortly thereafter, with Upper Darby prioritizing the production of data concerning parking tickets and certain other documents about the alleged issues. *See* 4/2/24 Scheduling Order (ECF 27).

### B.     Settlement Negotiations

As previously reported to the Court, in May 2024 the parties jointly engaged a private mediator, Joel Schneider, United States Magistrate Judge (Ret.) (D.N.J.), to mediate this matter

2

between them. The parties had telephonic conferences with Magistrate Judge Schneider in June 2024. The parties also had direct discussions between themselves about documents, information, and data relating to the scope of Plaintiff's class claims and the challenged conduct.

After submitting mediation memoranda, the parties had an in-person mediation conference with Magistrate Judge Schneider on July 25, 2024.  In the weeks following the mediation, with Judge Schneider's assistance, the parties were able to reach an agreement in principle to resolve this matter on a class basis.  The parties jointly sought and received a 45-day extension of discovery deadlines to finalize the Settlement.

## III.    OVERVIEW OF SETTLEMENT

### A.    The Settlement's Key Terms

The Settlement contemplates the following settlement class:

> [A]ll persons who were issued a parking ticket by Upper Darby between January 1 , 2021 and December 31, 2022 excluding (a) any Settlement Class Members who file a timely request for exclusion; (b) any officers, directors, or employees, or immediate family members of the officers, directors, or employees, of Defendant or any entity in which Defendant has a controlling interest; (c) any person who has acted as a consultant of Defendant; (d) any legal counsel or employee of legal counsel for Defendant; (e) any federal, state, or local government entities; and (f) any judicial officers presiding over the Action and the members of their immediate family and judicial staff.

Ex. A at § 1.29. The Settlement provides that Upper Darby will create a non-reversionary settlement fund of $800,000. *Id.* at § 2.1. After payment of class notice and administration costs, attorneys' fees plus expenses, and any service award, eligible Settlement Class Member will be entitled to receive a pro rata share of the Net Settlement Fund on a per ticket basis. *Id.* at §§ 2.1, 2.2.

The Settlement provides for substantial non-monetary relief as well. Upper Darby will cancel all remaining unpaid tickets for the class period, return or credit payments made on at-issue

parking tickets after the Execution Date of the Settlement. *Id.* at § 2.3(a). Upper Darby also will implement business practice changes reasonably necessary to ensure that notice and a hearing are timely provided for unpaid parking tickets issued by Upper Darby. *Id.* at § 2.3(b).

As consideration for the monetary and injunctive relief, Upper Darby will receive a release from each Settlement Class Member as more specifically delineated in the Settlement with respect to claims that were or could have been alleged in the complaint. *Id.* at § 3.

The Settlement provides that Plaintiff may seek attorneys' fees of up to one-third of the settlement fund plus costs, and also may seek a service award for Plaintiff up to $5,000. *Id.* at §§ 2.4, 2.5. Any service award, attorneys' fees, and costs will be paid by from the monetary relief available to the Settlement Class, along with notice and claims administration fees. *Id.* at § 2.1. Angeion Group, the firm selected to serve as notice and claims administrator, has estimated the latter to be approximately $98,000 depending on the number of Settlement Class Members, which is typical for a case and notice program of the sizes here. *See* Ex. B (Counsel Decl.) at ¶ 18.

### B.    Notice and Claims Administration

The parties have chosen Angeion Group to serve as notice and claims administrator. The Settlement contemplates a notice program consisting of direct notice in the form of mail notice, as well as publication notice via a settlement website. Ex. A at § 5.2. Direct mail notice will be accomplished by use of data furnished by Upper Darby. *Id.* at § 5.2(c).

Both the proposed long-form and short-form class notice have been designed to give the best notice practicable; are tailored to reach members of the Settlement Class; and are reasonably calculated under the circumstances to apprise the Settlement Class of the Settlement and, specifically, each Settlement Class Member's rights (i) to make claims, (ii) to exclude themselves from the Settlement, or (iii) to object to the Settlement's terms, or Class Counsel's anticipated fee

4

application and request for a service award for Plaintiff. Id. at §§ 5.5, 5.6. All forms of notice will

include, among other information: (i) a context-appropriate description of the Settlement; (ii) the

date by which Settlement Class Members may make a claim, exclude themselves from the

Settlement Class, or object to the Settlement; and (iii) the address of the Settlement Website. *Id.*

at § 5.2, 5.4, 5.5, 5.6. Requests for exclusion or objections must be sent to Angeion Group as

provided in the Settlement. *Id.* at §§ 5.5, 5.6. The deadlines for objections, requests for exclusion,

and claims are all before the Fairness Hearing. *Id.*

In sum, the notice program constitutes sufficient notice to persons entitled to receive it, and

satisfies all applicable requirements of law, including Federal Rule of Civil Procedure 23 and the

constitutional requirement of due process.

## IV.      THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL STANDARD

Rule 23(e) of the Federal Rules of Civil Procedure provides for judicial approval of the

compromise of claims brought on a class basis if the proposed class action settlement is "fair,

reasonable, and adequate." Approval of class action settlements is committed to the sound

discretion of the district court. *See* Fed. R. Civ. P. 23(e). In exercising its discretion, district courts

are mindful of the strong judicial policy favoring settlements. *See, e.g.*, *In re Warfarin Sodium*

*Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004); *see also Ehrheart v. Verizon Wireless*, 609 F.3d

590, 595-96 (3d Cir. 2010) ("strong presumption" in favor of class settlements).

According to the United States Court of Appeals for the Third Circuit, there is "an initial

presumption of fairness when the court finds that (1) the negotiations occurred at arm's length; (2)

there was sufficient discovery; (3) the proponents of the settlement are experienced in similar

litigation; and (4) only a small fraction of the class objected." *In re GMC Pick-Up Truck Fuel Tank*

*Prods. Liab. Litig.* ("*In re GMC*"), 55 F.3d 768, 785 (3d Cir. 1995); *see, e.g.*, *Zimmerman v.*

*Zwicker & Assocs., P.C.*, No. 09-3905 (RMB/JS), 2011 WL 65912, at \*2 (D.N.J. Jan. 10, 2011) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason."). At the final approval stage, an expanded set of these factors are often referred to as the *Girsh* factors (e.g., reactions of the class to the settlement, etc.). *See In re GMC*, 55 F.3d at 785 (citing *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975)).

Here, all of the pertinent factors at this preliminary approval stage under *In re GMC* and *Girsh* support preliminary approval.

***Arm's Length Negotiation***.   Typically, "[t]here is a presumption of fairness when a proposed class settlement, which was negotiated at arm's-length by counsel for the class, is presented to the Court for approval." *Newberg on Class Actions* § 11.41 (4th ed. 2002). Additionally, "participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *Walker v. Highmark BCBD H. Options, Inc.*, No. 20-cv-01975, 2022 WL 17592067, at \*3 (W.D. Pa. Dec. 13, 2022) (internal quotation marks and citation omitted).

Here, the parties engaged in arm's length negotiations with the assistance a very experienced neutral mediator, the Hon. Joel Schneider, United States Magistrate Judge (Ret.) (D.N.J.), to mediate. *See* Ex. B at ¶ 2. With the mediator's assistance, experienced counsel for each side, informed about the facts and familiar with the strengths and weaknesses of their respective positions, had repeated back-and-forth discussions about a potential settlement in principle with each other and through Magistrate Judge Schneider. *Id.* at ¶¶ 2-4. Between the information exchanged between the parties, the risks of continued litigation, and an appreciation for the

6

substantial value the Settlement delivers to the Settlement Class when evaluated in this context, the parties reached a resolution. *Id.*

**There Was Discovery.** The parties exchanged substantial information, data, and documents between them prior to agreeing to the Settlement. Upper Darby produced a number of highly relevant materials, including data about every at-issue ticket, and documents concerning the scope the challenged conduct and the time period for which notices and hearings might not have been provided in an appropriate manner. Ex. B at ¶¶ 4, 8. These materials directly informed the parties and the mediator during negotiations.

**Experienced Counsel.** Both sides' counsel are qualified and competent class action litigators, well-positioned to evaluate the strengths and weaknesses of continued litigation, as well as the reasonableness of the Settlement. Plaintiff's Class Counsel has successfully handled national, regional, and statewide class actions, as well as other complex mass or multi-party actions, throughout the United States in both federal and state courts, including appointment as co-lead counsel in multiple recent large matters in this Circuit such as *In re Valsartan, Losartan, & Irbesartan Products Liability Litigation*, No. 19-md-2875 (D.N.J.) and *In re Metformin Marketing and Sales Practices Litigation*, No. 20-cv-02345 (D.N.J.). *See* Ex. B at ¶¶ 11-12.

**The Settlement Is Within the Range of Reasonableness.** In preliminarily assessing whether a settlement falls within the range of reasonableness, courts examine the potential relief to the class. *See, e.g.*, *Zimmerman*, 2011 WL 65912, at *2. The reasonableness of the Settlement must also be viewed against the complexity, expense, and duration of litigation, the stage of the proceedings, and the likelihood of success at trial. *See, e.g.*, *In re Pet Food Prods. Liab. Litig.*, 629 F.3d 333, 350 (3d Cir. 2010); *Girsh*, 521 F.2d at 157.

Here, the Settlement provides for a pro rata percentage settlement payment, per ticket, to each eligible Settlement Class Member. *See* Ex. A at § 2.2. While the exact class size and at-issue tickets are not yet fully known, even assuming there may be more than 10,000 eligible claimants, each claimant would stand to get a substantial percentage of paid tickets back, after notice and administration costs, attorneys' fees and expenses, and a service award. Ex. B at ¶ 6. Depending on the final evaluation of the data and the outcome of the claims process, most if not all eligible claimants stand to recover approximately fifty-percent of what they paid on at-issue tickets, and may receive more up to a maximum of one-hundred percent. Ex. B at ¶ 6.

On top of the monetary relief for already-paid tickets, the Settlement contains two other very important and valuable injunctive components. The first is that Upper Darby will cancel all remaining, unpaid tickets issued during the class period. The second is that Upper Darby will implement business practice changes reasonably necessary to ensure notice and a hearing are timely provided for unpaid parking tickets in the future. Both of these components represent significant value to the Settlement Class.

In short, the Settlement will deliver substantial monetary and non-monetary value to Settlement Class Members without the inherent risks and costs of continued litigation.  Further litigation of this matter would require substantial resources and delay a recovery, if any. Were this matter to continue without resolution, additional discovery would need to occur, specifically depositions and potential third-party discovery. Ex. B at ¶¶ 13-16. The parties also have not yet briefed class certification, which likely would require expert disclosures and depositions, and motions for summary judgment have not yet been filed. *Id.* All of these matters would require significant time and expense, and while Plaintiff and her counsel remain committed to Plaintiff's

claims, they are also pragmatic that there is no guarantee of success and that substantial obstacles exist at the summary judgment, class certification, and trial phases. *Id.*

Moreover, the Settlement was reached at a critical moment: after receipt of vital information from Upper Darby, but before pivotal procedural and merits junctures after which the difficulty and expense of litigating Plaintiff's claims would have increased very substantially. This has enabled Plaintiff's counsel to evaluate with confidence the strengths and weaknesses of Plaintiff's claims and Upper Darby's defenses. *Id.* Plaintiff also faces the very real prospect of being foreclosed from some or any recovery as a result of class certification, summary judgment, and other typical motions practice, or at trial. *Id.*

## V. THE SETTLEMENT SATISFIES FEDERAL RULE OF CIVIL PROCEDURE 23

"In order to approve a class settlement agreement, a district court must determine that the requirements for class certification under Federal Rule of Civil Procedure 23(a) and (b)" are met. *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 257 (3d Cir. 2009). "The requirements of Rule 23(a) and (b) are designed to insure that a proposed class has sufficient unity so that absent class members can fairly be bound by decisions of class representatives." *Id.* (internal quotations and citation omitted). Here, the Settlement plainly satisfies Rules 23(a) and (b), and should be approved consistent with the "overriding interest in settling class action litigation." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 535.

### A. The Settlement Satisfies Rule 23(a)

Rule 23(a) lays out four threshold requirements for certification of a class action: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See* Fed. R. Civ. P. 23(a); *In re Pet Food Prods.*, 629 F.3d at 341, n.14. The Settlement satisfies each of these requirements.

9

### 1.     The Class Is Numerous

A class must be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a). Although no magic number exists, courts typically find the numerosity requirement to be satisfied if there are more than 40 class members.  *In re NFL Concussion Injury Litig.*, 821 F.3d 410, 426 (3d Cir. 2016).   The Settlement easily exceeds this threshold. Upper Darby's data suggests there are many thousands of Settlement Class Members. Ex. B at ¶ 6.

### 2.     Common Questions of Fact and Law Exist

Rule 23(a)'s commonality requirement also is satisfied here. "A putative class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *In re NFL*, 821 F.3d at 426-27 (internal quotations and citation omitted). Thus, commonality is "easily met" in most instances. *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994).

Such is the case here. Plaintiff's and other Settlement Class Members' claims stem from a common course of conduct. Each Settlement Class Member was issued a parking ticket during the same time period, and each was denied a timely notice and a hearing. Each of them was harmed in the same alleged way. Upper Darby's principal defenses also are common to all Settlement Class Members.

### 3.     Plaintiff's Claims Are Typical

The typicality requirement aims to assure that the interests of named class representatives align with the interests of the class. *See  In re NFL*, 821 F.3d at 427-28. The Third Circuit has "set a low threshold for typicality." *Id.* (internal quotations and citation omitted). To this end, "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories or where the claim arises from the same practice or

course of conduct." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998) (internal quotations and citation omitted).

Plaintiff's claims are identical to those of the Settlement Class. As alleged in the Complaint, Plaintiff alleges the same type of harm arising out of the same conduct or circumstances to which other Settlement Class Members were exposed. Thus, Plaintiff meets the typicality requirement, and is well-suited to represent other Settlement Class Members.

### 4.     The Adequacy Requirement Is Met

Rule 23(a)(4) requires class representatives to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement focuses on whether the representatives have any conflicts of interest with the interests of the class, and whether class counsel is capable of representing the class. *See Gen'l Tel. Co. of S.W. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *In re NFL*, 821 F.3d at 428-29.

Plaintiff's interests are coextensive with, and not antagonistic to, the interests of the Settlement Class because Plaintiff and the absent members of the Settlement Class have an equally great interest in the relief offered by the Settlement. Ex. B at ¶¶ 9-10. There  is no divergence between Plaintiff's interests and those of the other members of the Settlement Class. *Id.* As noted above, the proposed class representative and other Settlement Class Members' claims arise from the same conduct and turn on the same alleged actions or omissions, and Plaintiff seeks remedies equally applicable and beneficial to herself and all other Settlement Class Members. Further, the proposed class representative is represented by qualified and competent Class Counsel with extensive experience and expertise in prosecuting complex class actions. *Id.*

### B.     The Settlement Satisfies Rule 23(b)(3)

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that class action treatment is superior to other available methods of adjudication.

Fed. R. Civ. P. 23(b)(3). Predominance focuses on the cohesiveness of the proposed class. *See, e.g.*, *In re NFL*, 821 F.3d at 434. Cohesiveness exists where questions of law or fact common to the class will turn on the same evidence, and their resolution will have a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member. *Id.* Courts are "more inclined to find the predominance test met in the settlement context." *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 304 n.29 (3d Cir. 2011) (en banc) (internal quotations and citation omitted).

Rule 23(b)(3) requires only "a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class." *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 113 S. Ct. 1184, 1191 (2013). A plaintiff is not required "to prove that each element of her claim is susceptible to classwide proof." *Id.* at 1196. Rather, she need only show that common questions will predominate with respect to her case as a whole. *Id.*

Common fact and legal questions predominate here. The evidence necessary to prove liability for Plaintiff's claims is the same as it would be for each Settlement Class Member. Questions concerning whether Upper Darby failed to provide notice and a hearing, and why, are not only common to the Settlement Class, but are the predominant consideration in deciding whether Upper Darby is liable to Plaintiff and the Settlement Class as a whole. *See, e.g.*, *In re NFL*, 821 F.3d at 434 (common questions predominated regarding defendant's "knowledge and conduct as well as common scientific questions"). Liability questions common to the Settlement Class substantially outweigh any possible individual issues. The claims of Plaintiff and the Settlement Class are based on the same legal theories and the same conduct.

Further, resolution of the claims of Settlement Class Members through the settlement of a class action is far superior to individual lawsuits because it promotes consistency and efficiency

of adjudication. *See* Fed. R. Civ. P. 23(b)(3). Absent certification, potential class members would lack incentive to pursue individual claims due to the relatively small individual amounts at issue. Individual class members have little interest or motivation to prosecute their own claims for low-dollar damages. *In re NFL*, 821 F.3d at 435.

By comparison, the Settlement will result in substantial, timely, and real monetary and injunctive relief. Under these circumstances, use of the class mechanism is the superior alternative for resolving this dispute as it will achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated. *See id.* After all, "[w]here it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without effective redress unless they may employ the class-action device." *Deposit Guaranty Nat'l Bank, Jackson, Miss. v. Roper*, 445 U.S. 326, 339 (1980).

## VI.   THE NOTICE PROGRAM IS APPROPRIATE

For due process purposes, notice to class members must be reasonably calculated to reach absent class members. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The notice contemplated by the Settlement is reasonably calculated to reach Settlement Class Members and to inform them of the necessary information. *Eisen*, 417 U.S. at 173.

The parties have agreed to select Angeion Group as settlement administrator to effectuate the class notice and the claims process, and oversee the settlement fund. Ex. B at ¶ 17. The administrator's costs will be paid from the settlement fund. Ex. A at § 2.1. As discussed *supra*, the notice program includes direct mail notice based on Upper Darby's records and a settlement website. Combined, these efforts will maximize outreach to potential class members.

The contents of the proposed short-form and long-form notices adequately apprise Settlement Class Members of (i) the class definition, (ii) the nature of this action, (iii) the key terms of the Settlement, (iv) how to obtain additional information about the Settlement, (v) their rights to participate or opt-out and the deadlines for each, (vi) the scope of the release, (vii) the attorneys' fees and costs and service award that may be sought, and that Court approval is necessary, and (viii) provides the time and location for the Final Approval Hearing, along with a description of same. Ex. A at ¶¶ 5.2 & Exhibits referenced therein. This constitutes sufficient notice. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH), § 21.312 (outlining notice considerations); *see also, e.g.*, *Zimmer Paper Prods., Inc. v. Berger & Montague, P.C.*, 758 F.2d 86, 91 (3d Cir. 1985) ("[F]irst-class mail and publication regularly have been deemed adequate under the stricter notice requirements . . . of Rule 23(c)(2)."); *Beneli v. BCA Fin. Servs., Inc.*, 324 F.R.D. 89, 99-100 (D.N.J. 2018) (approving mail and publication notice program).

Given the foregoing, the Court should approve the form and content of the proposed notices and direct the administrator to effectuate the notice program as contemplated in the Settlement.

## VII.    PROPOSED SCHEDULE OF EVENTS

Plaintiff attaches an agreed-upon proposed preliminary approval order to this Motion which sets forth the pertinent dates for the approval, notice, claims submissions, exclusion requests, opt-outs, Plaintiff's motions for attorneys' fees, costs, and service award, objections, and final approval.

## VIII.   CONCLUSION

For the reasons set forth herein, Plaintiff respectfully requests that the Court preliminarily approve the Settlement, conditionally certify the Settlement Class, appoint Plaintiff as settlement

15

class representative, appoint the undersigned as Class Counsel, approve the class notice program.

A proposed preliminary approval order is attached to this unopposed motion.


Dated: October 15, 2024

                                        Respectfully Submitted,

                                        */s/ David J. Stanoch*
                                        Ruben Honik
                                        David J. Stanoch, Of Counsel
                                        Honik LLC
                                        1515 Market Street, Suite 1100
                                        Philadelphia, PA 19102
                                        Tel: 267-435-1300
                                        ruben@honiklaw.com
                                        david@honiklaw.com

16

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on the date below, I caused a true and current copy of the foregoing

to be filed and served upon all counsel of record by operation of the court's CM/ECF system.


Dated: October 15, 2024                             */s/ David J. Stanoch*
                                                                    David J. Stanoch

16