IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA

| | |
|---|---|
| MARY G. CANDIDO, individually, and on behalf of all others similarly situated,<br>　　Plaintiff,<br><br>v.<br><br><br>UPPER DARBY TOWNSHIP,<br>　　Defendant | Case No. 2:23-cv-01542-CMR |

**PLAINTIFF'S UNOPPOSED MOTION AND INCORPORATED MEMORNADUM OF LAW FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARD**

**I.    INTRODUCTION**

This Court granted preliminary approval of the parties proposed class action settlement agreement (the "Settlement") on December 2, 2024. *See* ECF 31. The Settlement will resolve Plaintiff's and Settlement Class Members' claims against Defendant Upper Darby Township in this matter concerning the alleged lack of notice and hearings in connection with parking tickets issued by Upper Darby between January 1, 2021 and December 31, 2022 (the "Class Period").

By any measure, the Settlement is a resounding success for the Class. It provides for 100% recovery for all Settlement Class Members—either in the form of complete refunds for already-paid tickets, or the complete cancellation of yet-to-be paid tickets—plus business practice changes. The court-approved notice program confirms this: not a single class member excluded themselves from the Settlement by the exclusion deadline, nor has any objection been received to date.

Under the Settlement, Upper Darby will create a non-reversionary fund totaling $800,000 from which each Settlement Class Member who paid a parking ticket during the Class Period.

1

Further, pursuant to the Settlement, Upper Darby will take steps to cancel all unpaid tickets issued during the Class Period, which represents a benefit of approximately $559,760.00 to the Class. Thus, the total value the Settlement creates for the class is $1,359,760.00. Finally, Upper Darby also has agreed to implement business practice changes reasonably necessary to ensure notice and a hearing are timely provided for unpaid parking tickets in the future.

This monetary and non-monetary relief is an excellent result for the Settlement Class. Plaintiff now moves pursuant to the Settlement, Federl Rule of Civil Procedure 23(h), and this Court's preliminary approval order for $407,938 in attorneys' fees (or 30% of the $1,359,760.00 aggregate value created for the Class), for $6,494.00 in costs, and for a $5,000 service award for Plaintiff. As discussed more fully below, these requested amounts are well within the ranges approved by courts in this District and Circuit. Plaintiff has conferred with Defendant, and the latter does not oppose this motion.

## II.     BACKGROUND

### A.     Case Overview

Plaintiff set forth a thorough overview of this case's allegations and procedural posture in her since-granted motion for preliminary approval. *See generally* ECF 30. Plaintiff incorporates that overview by reference and will not repeat it here. Plaintiff merely notes here that this class action concerns Upper Darby's alleged failure to provide notice and a hearing in connection with parking tickets issued during the Class Period, and that the Settlement will resolve all such claims on a class-wide basis.

### B. Settlement Overview

The Court is familiar with the Settlement's terms from Plaintiff's motion for preliminary approval (ECF 30). For purposes of this Motion, Plaintiff recaps the key monetary and non-monetary relief obtained for the Settlement Class.

The Settlement provides that Upper Darby will commit $800,000 to a non-reversionary fund from which each Settlement Class Member may receive a pro rata share of any tickets paid during the Class Period after the deduction of class notice and administration costs, attorneys' fees and costs, and any service award. *See* ECF 30-1, at §§ 1.29, 2.1–2.5. The Settlement Administrator currently anticipates that the net settlement fund (i.e., after the deductions noted *supra*) should be sufficient to afford all Settlement Class Members a full recovery for all parking tickets paid during the Class Period. *See* Ex. A (Honik Decl.).

In addition, the Settlement provides that Upper Darby will take steps to cancel all remaining unpaid tickets from the Clas Period, and return or credit payments made on at-issue parking tickets after the Execution Date of the Settlement. *See* ECF 30-1 at § 2.3. The Settlement Administrator estimates that the value of unpaid tickets to be cancelled is approximately $559,760.00. *See* Ex. A (Honik Decl.). Thus, the total monetary value created for the Class is $1,359,760.00. *Id.*

Finally, Upper Darby also will implement business practice changes necessary to ensure that notice and a hearing are provided timely for unpaid parking tickets issued by Upper Darby. *See* ECF 30-1 at § 2.3(b).

The Settlement provides that Plaintiff may seek attorneys' fees of up to one-third of the settlement fund plus costs, and also may seek a service award for Plaintiff up to $5,000. *Id.* at §§ 2.4, 2.5.

The court-approved class notice program is complete. To date, the Settlement Administrator has reported no exclusion requests or objections have been received. This Court's preliminary approval order set March 20, 2025 as the deadline for this Motion. *See* ECF 31. Objections or opposition to this Motion are due by April 21, 2025. *Id.*

### III. PLAINTIFF'S REQUEST FOR ATTORNEYS' FEES IS REASONABLE AND AUTHORIZED BY THE SETTLEMENT

At the conclusion of a successful class action, class counsel may apply to a court for an award of attorneys' fees. *See* Fed. R. Civ. P. 23(h). The amount of an attorneys' fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes finding of fact not clearly erroneous[.]" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 329 (3d Cir. 2011) (en banc) (internal quotation marks and citation omitted). Plaintiff's Class Counsel requests attorneys' fees in the amount of $407,938.00, or 30% of the aggregate benefit created for the Class. This request falls within the acceptable range of fees routinely approved in this Circuit.

#### A. The Settlement Agreement Provides for a Percentage of Recovery

"Attorneys' fees requests are generally assessed under one of two methods: the percentage-of-recovery ('POR') approach or the lodestar scheme." *Sullivan*, 667 F.3d at 330. The POR approach is appropriate in cases involving a common settlement fund, i.e., when a settlement contemplates one fund from which class member payments and attorneys' fees will be paid. *See In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 821 (3d Cir. 1995). The Supreme Court has recognized that "'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's

4

fee from the fund as a whole.'" *Brytus v. Spang & Co.*, 203 F.3d 238, 242 (3d Cir. 2000) (quoting *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

The Settlement provides that Plaintiff may request attorneys' fees up to 33%, plus reimbursement of litigation costs and a service award for Plaintiff. *See* ECF 30-1 at §§ 2.4, 2.5. This was an appropriate way to resolve attorneys' fees. *See Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983) ("A request for attorneys' fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of the fee."); *see also Cohn v. Nelson*, 375 F. Supp. 2d 844, 854 (E.D. Mo. 2005) (where "parties have agreed on the amount of attorneys' fees and expenses, courts give the parties' agreement substantial deference").

To determine whether a percentage is reasonable, courts in this Circuit consider the following non-exhaustive factors identified by the Third Circuit in *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 2001) and *In re Prudential Insurance Company of America Sales Practices Litigation Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998):

> (1) the size of the fund created and the number of beneficiaries, (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel, (3) the skill and efficiency of the attorneys involved, (4) the complexity and duration of the litigation, (5) the risk of nonpayment, (6) the amount of time devoted to the case by plaintiffs' counsel, (7) the awards in similar cases, (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups, such as government agencies conducting investigations, (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained, and (10) any innovative terms of settlement[.]

*In re Diet Drugs Prods. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (intervening citations omitted). Courts generally apply these same factors in awarding a fee to a prevailing party under 42 U.S.C. §1988.[1]

---

[1] Under 42 U.S.C. § 1988(b), in proceedings such as this one involving the alleged violation of federal constitutional or civil rights, "the court, in its discretion, may allow the prevailing party,

5

Further, when attorneys' fees are calculated based on the entire fund, a court "requir[es] every member of the class to share attorney's fees to the same extent that [they] can share the recovery." *Boeing*, 444 U.S. at 478. Thus, courts should only decrease a fee award "[w]here a district court has reason to believe that counsel has not met its responsibility to seek an award that adequately prioritizes direct benefit to the class." *Baby Prods. Antitrust Litig.*, 708 F.3d 163, 178 (3d Cir. 2013). Class Counsel's fee request here falls within this acceptable range. As discussed *infra*, application of the appropriate factors supports the fee request. In addition, a fee award of 30% is consistent with (and indeed, less than) the fee awards approved by other courts.

**The Size of the Fund (Factor One).** The first factor favors Plaintiff's fee request. The Third Circuit has stated that "courts can evaluate the reasonableness of a percentage-based award by reference to either amounts paid or amounts made available." *See In re Wawa, Inc. Data Security Litig.*, 85 F.4th 713, 724 (3d Cir. 2023).

The non-reversionary settlement fund created by the Settlement of $800,000 is sufficient to ensure that every single Settlement Class Member will receive a full refund for all tickets paid during the Class Period, after deductions for notice and administration costs and the requested award of attorneys' fees, costs, and a service award. *See* Ex. A. Additionally, the Settlement provides for the cancellation of all tickets issued during the Class Period that Settlement Class Members have not yet paid. The Settlement Administrator estimates the value of the to-be-cancelled tickets to be approximately $559,760. *Id.* Thus, the total value created for the Class is

---

other than the United States, a reasonable attorney's fee as part of the costs." *Hensley*, 461 U.S. at 426; *Raab v. City of Ocean City, N.J.*, 833 F.3d 286, 292 (3d Cir. 2016). Plaintiff need not file a motion for fees under § 1988 here because of the class settlement agreement. *See, e.g.*, *Austin v. Pa. Dep't of Corr.*, 876 F. Supp. 1437, 1469 (E.D. Pa. 1995). Nonetheless, similar considerations guide fee awards under § 1988 and in the class settlement context. *Id.*

$1,359,760, and the Settlement provides for a 100% recovery for Settlement Class Members (either through refund payments or cancellation of payments owed). Per *In re Wawa*, this amount of $1,359,760 is the total amount inuring to the Settlement Class Members' benefit. *See In re Wawa*, 85 F. 4th at 724; *see also, e.g.*, *In re Flonase Antitrust Litig.*, 951 F. Supp. 3d 739, 747 (E.D. Pa. 2013) (this factor favored approval of requested fee because "[e]very dollar of the net fund will be distributed to class members" after fees, costs, and service award).

Moreover, aside from the substantial monetary relief, the Settlement also provides for a broad slate of non-monetary relief that directly benefits each Settlement Class Member. Even without putting a dollar value on this relief, the important non-monetary components represent substantial value to each Settlement Class Member and are additional direct benefits that each Settlement Class Member will receive, further supporting the requested fee here. *See, e.g., McCoy v. Health Net, Inc.*, 569 F. Supp. 2d 448, 478-79 (D.N.J. 2008).

***Objections to the Settlement (Factor Two).*** Objections are not yet due under this Court's preliminary approval order. *See* ECF 31. Therefore, this factor is neutral at this time. Plaintiff will further address this factor in her forthcoming motion for final approval. However, Plaintiff does note that no objections have been filed to date.

***The Complexity and Duration of the Litigation (Factor Four), the Skill and Efficiency of the Attorneys Involved (Factor Three), the Value of Benefits Attributable to the Efforts of Class Counsel (Factor Eight), Innovative Terms of the Settlement (Factor Ten), and Their Time Devoted (Factor Six).*** These factors collectively favor approval of the requested fee. Per the Third Circuit, the goal of percentage-based fee awards in class case to see that "that competent counsel continue to undertake risky, complex, and novel litigation." *Gunter*, 223 F.3d at 198. "The single

7

clearest factor reflecting the quality of class counsels' services to the class are the results obtained." *Cullen v. Whitman Medical Corp.*, 197 F.R.D. 136, 149 (E.D. Pa. 2000).

Certainly, the "results obtained" for the Class—a 100% monetary recovery for all Settlement Class Members, plus business practice changes—strongly reflects "the quality of class counsels' services." *Id.* While perhaps not the most legally complex matter, there is little question that the granular factual details of this nearly two-year old matter required careful attention and analysis to understand and unwind the reasons behind the challenged conduct, and trace the harm to Settlement Class Members. Class Counsel are seasoned attorneys with considerable experience litigating and settling class actions of similar size, scope and complexity. *See* Ex. A. Class Counsel regularly engage in class action and other litigation involving consumer and other complicated class claims, and have been appointed class counsel by courts throughout the country. *Id.* Navigating the strengths and weaknesses of Plaintiff's and the Class's claims were crucial to posturing this matter for the excellent result Class Counsel obtained for the benefit of the entire Settlement Class.

Also, the skill and competence of Upper Darby's lawyers should be considered and cannot be doubted. *See, e.g.*, *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) ("In assessing the quality of representation, courts have also looked to the quality of the opposition the plaintiffs' attorneys faced"). Upper Darby is represented by Cipriani & Werner PC, a full-service law firm with over 200 professionals across 17 offices. *See* https://www.c-wlaw.com/. All told, the complexity and duration of the case (factor four) and the skill of Class Counsel (factor three) favor the requested fee.

Because of Class Counsel's experience and diligence, they were able to obtain a substantial monetary and non-monetary recovery for Plaintiff and the Settlement Class. Absent Class

Counsel's efforts, Settlement Class Members did not stand to receive any recovery (factor eight). The non-monetary relief obtained through the Settlement also represents a substantial benefit directly attributable to Class Counsel's efforts. This is another reason factor eight militates in favor of approving the requested fee.

The Settlement might not include any groundbreakingly innovative terms (factor ten). Yet, it nevertheless provides a robust combination of significant, guaranteed monetary relief, as well as concrete, valuable non-monetary relief. At worst, factor ten is neutral.

Finally, as to time devoted (factor six), Class Counsel leanly staffed this matter yet still devoted approximately 329.3 hours to it. *See* Ex. A. This was time that could not be spent on litigating other matters. *Id.*; *see Yates v. Mobile Cnty Pers. Bd.*, 719 F.2d 1530, 1535 (11th Cir. 1983) (recognizing that the expenditure of 1,000 billable hours, often in significant blocks of time, "necessarily had some adverse impact upon the ability of counsel for plaintiff to accept other work"). This factor also favors the requested fee.

**Risk of Nonpayment (Factor Five).** The risk of nonpayment in this action was not negligible. Were this case litigated further on the merits, success was far from guaranteed. As Plaintiff explained at preliminary approval, were this matter to continue to be litigated, additional costly fact discovery and expert discovery would need to occur; class certification would be a hotly-contested procedural event (not to mention any Rule 23(f) appeal); and further merits briefing would involve substantial, potentially dispositive defenses raised by Upper Darby at summary judgment or trial. In short, this factor supports approval of the requested fee. *See, e.g.*, *In re Flonase*, 951 F. Supp. 2d at 748 ("as a contingent fee case, counsel faced a risk of nonpayment in the event of an unsuccessful trial"); *see also* Ex. A (Class Counsel litigated this case on contingent basis).

***Awards in Similar Cases (Factor Seven), and the Percentage Fee Had It Been Negotiated on a Private Contingency Basis (Factor Nine).*** Both of these factors favor approval of the requested fee. Courts in this Circuit routinely approve class counsel fee awards up to "forty-five percent of the common fund." *McDonough v. Toys R Us, Inc.*, 80 F. Supp. 3d 626, 653 (E.D. Pa. 2015) (collecting cases). The fee award requested here is 30%, which is well within the range of fees approved by other courts in this District and Circuit.[2]

Finally, were this case brought individually on a contingency fee basis (factor nine), Class Counsel would be entitled to recover up to 40% of any recovery. *See, e.g.*, *Dartell*, 2017 WL 2815073, at * 11 ("the customary contingent fee would likely range between 30% and 40% of the recovery"); *In re Lucent Tech., Sec. Litig.*, 327 F. Supp. 2d 426, 442 (D.N.J. 2006) (same); *In re Ikon Office Solutions, Inc. Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) ("plaintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery").

### B. A Lodestar Cross-Check Underscores the Requested Fee's Reasonableness

Although "the percentage of common fund approach is the proper method of awarding attorneys' fees," courts in this Circuit occasionally apply the lodestar method as well as a cross-check of a fee calculation under the POR method. *In re Rite Aid Secs. Lit.*, 396 F.3d 294, 306 (3d Cir. 2005). "[T]he lodestar cross-check does not trump the primary reliance on the percentage of common fund method." *Id.* at 307. "The lodestar cross-check calculation need entail neither

---

[2] *See, e.g.*, *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, 13-MD-2445, 2023 WL 8437034, at *14 (E.D. Pa. Dec. 4, 2023) (33.3%); *Brown v. Kardence Int'l, Inc.*, No. 22-1097, 2023 WL 6050215, at *5 (E.D. Pa. Sept. 15, 2023) (35%); *Beltan v. Sos Ltd.*, No. 21-7454, 2023 WL 319895, at *7 (D.N.J. Jan. 3, 2023) (33.3%); *Dartell v. Tibet Pharms. Inc.*, No. 14-3620, 2017 WL 2815073, at *10-11 (D.N.J. June 29, 2017) (33.3%); *In re Flonase*, 951 F. Supp. 3d at 748 (33.3%); *Adeva v. Intertek USA Inc.*, No. 09-1096, ECF 228 (D.N.J. Dec. 22, 2010) (34%).

mathematical precision nor bean-counting. The district courts may rely on summaries submitted by the attorneys and need not review actual billing records." *Id.* at 306-07.

"The lodestar award is calculated by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *Id.* at 305. The lodestar is then subject to a multiplier (sometimes called the "lodestar multiplier"). *Id.*; *see also, e.g.*, *Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp.*, 540 F.2d 102, 117 (3d Cir. 1976). Multipliers up "to four are frequently awarded." *See, e.g., In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001).

The hours and rates in this action are reasonable, as set forth below. The total lodestar here for 329.3 hours is $205,642.50, or a 1.98 lodestar multiplier. *See* Ex. A. This is well within the range of cross-check lodestar multipliers approved by courts in this Circuit.[3]

***The Number of Hours Worked is Reasonable.*** Class Counsel spent over 230 hours in this action. Ex. A. The number of hours is reasonable given the breadth of this litigation. Since this action's inception, Class Counsel has spent significant time and effort in prosecuting the class claims against Upper Darby, including:

---

[3] *See, e.g.*, *Starnes v. Amazon.com, Inc.*, No. 23-cv-484, 2023 WL 3305159, at *9 (E.D. Pa. May 8, 2023) ("lodestar cross-check of between 3.57 and 2.62 within the range awarded in common fund cases"); *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No 08-0235, 2019 WL 4877563, at *6 (D.N.J. Oct. 3, 2019) ("Multiplier numbers ranging from one to four have been awarded in this Circuit when the lodestar method is applied to common fund cases."); *Keller v. TD Bank, N.A.*, Civ. A. No. 12-5054, 2014 WL 5591033, at *16 (E.D. Pa. Nov. 14, 2014) (approving "multiplier of slightly above 3"); *In re Linerboard Antitrust Litig.*, MDL No. 1261, 2004 WL 1221350, at *16 n.9 (E.D. Pa. June 2, 2004) (3.67 multiplier); *Stop & Shop Supermarket Co. v. SmithKline Beecham Corp.*, Civ. A. No. 03-4587, 2005 WL 1213926, at *16 (E.D. Pa. May 20, 2005) ("The 2003 Class Action Reporter survey found that the average lodestar multiplier was 4.5 . . .").

- Extensive pre-filing investigation of the class claims, including multiple interviews with Plaintiff;[4]
- Conducting legal research regarding various procedural and substantive issues;
- Researching and drafting the complaint;
- Briefing in opposition to Upper Darby's motion to dismiss;
- Preparation and attendance at discovery conferences and court hearings;
- Reviewing and negotiating data and other information requests to Upper Darby;
- Reviewing Upper Darby's document and data productions;
- Mediation preparation and participation;
- Drafting and negotiating settlement documents, including the lengthy settlement agreement, class notice, and notice and settlement administration plan; and
- Preparing the preliminary and final approval pleadings.

Ex. A. The hours incurred on these necessary case tasks are reasonable.

***The Hourly Rates Are Reasonable.*** Billing rates "should be reasonable in light of the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re AT&T Corp. Secs. Litig.*, 455 F.3d 160, 164 (3d Cir. 2006) (internal quotations and citations omitted). Here, Class Counsel's hourly rates range between $525-$575 and $825-$875. *See* Ex. A. These rates are consistent with rates charged by attorneys in comparable law practices in this Circuit. *See, e.g., In re Remicade Antitrust Litig.*, No. 17-cv-4326, 2023 WL 2530418, at *28 (E.D. Pa. Mar. 15, 2023) (finding rates up to $1,200 per hour reasonable for senior attorneys); *Adam X. v. N.J. Dep't of Corr.*, 2022 WL 621089, at *11 (D.N.J. Mar. 3, 2022) (finding hourly rates up to $995 per hour reasonable); *Moore v. GMAC Mortg.*, Civ. A. No. 07-4296, 2014 WL 125538188, at *2 (E.D. Pa. Sept. 19, 2014) (finding hourly rates used in the lodestar calculation reasonably ranged between $325 and $860 per hour); *In re Merck & Co. Vytorin ERISA Litig.*, Civ. A. No.

---

[4] The Third Circuit construes "[c]ompensable activities to include pre-litigation services in preparation of filing the lawsuit, background research and reading complex cases, [and] productive attorney discussions[.]" *Posa v. City of East Orange*, Civ. No. 03-233, 2005 WL 2205786, at *4 (D.N.J. Sept. 8, 2005) (collecting Third Circuit cases).

08-cv-285, 2010 WL 547613, at *13 (D.N.J. Feb. 9, 2010) (approving rates up to $835 per hour). Other courts in this Circuit and elsewhere also have approved these same rates in other class action settlements involving Class Counsel. *See* Ex. A.[5]

Finally, a 2014 Survey of Hourly Billing Rates conducted by the National Law Journal shows that – over a decade ago – senior partner billing rates among law firms in New Jersey and Philadelphia were as high as $850 to $1,050 per hour.[6] The NLJ survey has been cited with approval in district courts within this Circuit. *See, e.g.*, *Harlan v. NRA Group, LLC*, No. 10-0324, 2011 WL 813961, at *1 n.1 (E.D. Pa. Mar. 2, 2011).

All of this is to say the hourly rates claimed by the attorneys in this litigation are reasonable.

***The Lodestar Multiplier Is Reasonable.*** "The multiplier is a device that attempts to account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *In re Rite Aid*, 396 F.3d at 305-306; *see Lindy*, 540 F.2d at 117 (multiplier reflects "the contingent nature of [the suit's] success" and the "delay in the receipt of payment for services rendered"). Multipliers up "to four are frequently awarded." *See, e.g., In re Cendant Corp. Prides Litig.*, 243 F.3d 722, 742 (3d Cir. 2001).

---

[5] *See also, e.g., Nixon v. Grande Cosmetics, LLC*, No. 1:22-cv-6639 (D.N.J.) at ECF 48 (motion seeking same hourly fees for Class Counsel as those requested here) & ECF 71 (granting same); *Brodowicz v. Walmart, Inc.*, No. 21-cv-60643 (S.D. Fla.) at ECF 85 (motion seeking same hourly rates for Class Counsel as those requested here) & ECF 89 (granting same); *Presque Isle Colon & Rectal Surgery v. Highmark Health*, No. 17-cv-0122 (W.D. Pa.) at ECF 62 (same request for nearly identical hourly rates) & ECF 64 (granting same); *Brill v. Bank of America, N.A.*, No. 2:16-cv-03817 (D. Ariz.) at ECF 26 (same request) & ECF 32 (granting same); *Krimes v. JPMorgan Chase Bank, N.A.*, No. 2:15-cv-05087 (E.D. Pa.) at ECF 49 (same request) & ECF 58 (granting same).
[6] *See* https://www.law.com/nationallawjournal/almID/1202636785489/.

Were this a lodestar matter, as noted above, the multiplier would be 1.98. This is well within the range approved by courts in this Circuit.[7] Thus, the lodestar cross-check supports Plaintiff's fee request.

## IV. THE COSTS REQUESTED ARE REASONABLE AND WERE NECESSARILY INCURRED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Lincoln Adventures LLC v. Those Certain Underwriters at Lloyd's, London Members*, No. 08-0235, 2019 WL 4877563, at *8 (D.N.J. Oct. 3, 2019) (internal quotation marks and citation omitted); *see also Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 391-92 (1970).

Plaintiff seeks a total of $6,494.00 in litigation costs. *See* Ex. A. This sum corresponds to actual out-of-pocket costs that Class Counsel necessarily incurred in connection with the prosecution of this litigation. The costs are modest and limited to the filing fee, service of process fee, and Plaintiff's share of the mediator's fee. *Id.* Class Counsel have foregone seeking reimbursement of costs such as for legal research, copying, and the like. The requested costs are reasonable and justified. *See, e.g., Lincoln*, 2019 WL 4877563, at *8 (approving $1,850,000 in similar costs); *In re CertainTeed Fiber Cement Siding Litig.*, 303 F.R.D. 199, 226 (E.D. Pa. 2014) (approving $304,996.65 in similar costs); *Yong Soon Oh v. AT&T Corp.*, 225 F.R.D. 142, 154 (D.N.J. 2004) (approving $98,553.95 in similar costs).

## V. THE REQUESTED SERVICE AWARD IS REASONABLE AND SHOULD BE APPROVED

Service awards "compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Sullivan*, 667 F.3d at 333 n.65

---

[7] *See supra* n.3.

(internal quotations omitted). "It is particularly appropriate to compensate named representative plaintiffs with incentive awards where they have actively assisted plaintiffs' counsel in their prosecution of the litigation for the benefit of a class." *Fleisher v. Fiber Composites, LLC*, Civ. A. No. 12-1326, 2014 WL 86641, at *15 (E.D. Pa. Mar. 5, 2014) (internal quotations omitted)

The service award requested here for Plaintiff, the sole class representative in this case, is reasonable and appropriate. Plaintiff committed time and effort to this Action, and bore the risks involved in prosecuting this action. *See* Ex. A. The service award requested is $5,000, consistent with the Settlement. *See* ECF 30-1 at §§ 2.4, 2.5. The notice informed Settlement Class Members about this.

The service award requested falls well within the range approved in other cases. *See, e.g.*, *Lincoln*, 2019 WL 4877563, at *9 ("the Court finds the proposed $15,000 service awards to each of the two named plaintiffs to be fair and reasonable, and not excessive."); *Haught v. Summit Res., LLC*, No, 1:15-cv-0069, 2016 WL 1301011, at *7 (M.D. Pa. Apr. 2016) (approving $15,000 in service awards for class representatives, noting that service awards typically range "from $1,000 to $50,000" each); *In re Remeron End–Payor Antitrust Litig.*, No. 02–2007, 2005 WL 2230314, at *32-33 (D.N.J. Sept. 13, 2005) (approving $30,000 service award); *see also* 4 *Newberg on Class Actions* § 11.38, at 11-80 (citing empirical study from 2006 that found average award per class representative to be $16,000). Accordingly, the service award requested here is reasonable.

VI. **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that the Court grant her motion for attorneys' fees, costs, and service award.

Dated: March 20, 2025

15

        Respectfully Submitted,

        */s/ Ruben Honik*
        Ruben Honik
        David J. Stanoch, Of Counsel
        Honik LLC
        1515 Market Street, Suite 1100
        Philadelphia, PA 19102
        Tel: 267-435-1300
        ruben@honiklaw.com
        david@honiklaw.com

**CERTIFICATE OF SERVICE**

      I hereby certify that on the date below, I caused a true and current copy of the foregoing to be filed and served upon all counsel of record by operation of the court's CM/ECF system.

Dated: March 20, 2025	          */s/ Ruben Honik*
                                                Ruben Honik